UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **HEARTLAND CAPITAL INVESTMENTS, INC.,** ) ) ) | |
| Plaintiff/Counter-Defendant, ) ) | |
| v. ) ) | Case No. 08-CV-2162 |
| **GRANGE MUTUAL CASUALTY COMPANY,** ) ) ) ) | |
| Defendant/Counter-Plaintiff. ) | |

**OPINION**

Defendant/Counter-Plaintiff Grange Mutual Casualty Company (Grange) filed a Motion for Summary Judgment (#20) on August 5, 2009. Plaintiff/Counter-Defendant Heartland Capital Investments, Inc., (Heartland), filed a Motion for Summary Judgment (#23) on August 21, 2009. For the following reasons, Grange's Motion for Summary Judgment (#20) is GRANTED in full. Heartland's Motion for Summary Judgment (#23) is DENIED.

FACTUAL BACKGROUND

Both parties claim the following as undisputed facts:

On April 19, 2005, Heartland purchased real estate at 1000 North 14th Street in Charleston, Illinois, a property composed of seven buildings. At the time of the purchase, each of the seven buildings on the property was vacant, unoccupied, and unused. The electricity in "Building 1" was turned off in the fall of 2005 and Heartland made no attempt to restore electricity until November 2007. On April 25, 2005, Ervin Equipment (Ervin) entered into a lease with Heartland to rent a

portion of the property. The lease allowed Ervin to store its trailers on the parking lot of the premises. The actual lease provided:

> "Landlord leases to Tenant and Tenant leases from Landlord, storage defined to 150 semi-trailers or containers parking spots (the "Leased Premises") located at 1000 N. 14th, Coles County, Charleston, Illinois. During the term of the lease, Tenant shall have non-exclusive use and possession of the Leased Premises. Tenant shall not have use or possess any building located within the boundaries of the Leased Premises."

The lease further provided that "This agreement: (a) may be amended only by a writing signed by each of the parties." Heartland and Ervin did not amend their lease in writing to reflect any change in their agreement.

In June 2006 Ervin began to use some portion of Building 1 to store its equipment and tools. Prior to this time, from April 2005 until June 2006, Building 1 was not used by Ervin or anyone else for storage or any other purpose except for a small portion that was used by Heartland to store items of personal property, such as mowing equipment and other maintenance tools. While Ervin did use some portion of Building 1, it provided power through its own generators and did not use electrical service. From the April 2005 purchase date by Heartland, through August 2007, there were no occupants, lessees, sub-lessees, nor any person or entity other than Ervin and Heartland for Building 1.

On June 1, 2007, Heartland entered into a lease with Pac-Van, Inc. The lease was identical to the earlier one entered into with Ervin. Building 1 was not leased to Pac-Van. Between April 2005 and August 2007 the only other lease entered into by Heartland on the property was with

Everett Livvix, Ltd., which was for a building on the south side of the property. It was not Building 1.

On August 1, 2007, in preparation to show the property to a potential buyer, Heartland inquired about what would need to be done to restore electrical service to Building 1. At this time, Heartland discovered that approximately 9,000 linear feet of copper electrical cables were missing from Building 1. Heartland believes the cause of the missing copper wire to be theft. The date of the theft is unknown, but it occurred sometime between the fall of 2005 and August 1, 2007. Heartland alleges the theft occurred sometime between July 12, 2006, and August 1, 2007.

During the period of July 12, 2006 through August 1, 2007, there was in full force and effect a policy of insurance, provided by Grange, covering certain property owned by Heartland. The policy, by its terms, provided insurance coverage for seven building owned by Heartland. One of those buildings was described in the Grange policy as "Building 1," the building where the theft took place.

The policy contained a vacancy condition that stated:

"If the building where the loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

***

(e) Theft."

The policy defined "vacancy" in the following way:

"(1) As used in this Vacancy Condition, the term building and the term

vacant have the meanings set forth in ... (1)(b) below:

> (b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:
>
> > (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or
> >
> > (ii) Used by the building owner to conduct customary operations."

Heartland presented to Grange a claim asserting that at some time between the period of July 12, 2006, and August 1, 2007, it suffered a covered loss through theft of approximately $150,000 of copper wire. Grange denied the claim on the basis that Building 1 was vacant within the meaning of the Grange policy and thus excluded from coverage for theft.

Building 1 is an L-shaped warehouse with 322,565 square feet of floor area. The interior of Building 1 was not subdivided into sections which were inaccessible to each other, but instead was comprised of one very large open space. The only area used in any way by either Ervin or Heartland was the southwest portion of the building, an area that was used by both Heartland and Ervin. The total area of Building 1 used by Ervin and/or Heartland comprised 71,448 square feet of floor area, or 22.15% of the square footage of Building 1.

Heartland claims that, while the written lease between Heartland and Ervin expressly excluded the use or possession by Ervin of the buildings on the subject property, the lease was subsequently orally amended by agreement of those parties to allow Ervin to utilize and possess the

entire area of any of the buildings on the subject property not otherwise being leased to a third party.

PROCEDURAL HISTORY

Heartland filed its claim for insurance coverage in Illinois state court. This case was removed by Grange to federal court in July 2008. Grange then filed a Counterclaim for Declaratory Judgment (#3) on July 16, 2008. Grange filed its Motion for Summary Judgment (#20) on July 16, 2008. Grange argues that under the unambiguous provisions of the policy the theft at Building 1 is not covered. Grange argues that the building was clearly vacant and thus the conditions of coverage for a theft were not met. First, Grange argues that Heartland did not have a lease with Ervin for Building 1 or any other building on the property. However, assuming arguendo that Heartland did lease Building 1 to Ervin, the policy's vacancy condition requires at least 31% of the building's total square footage to be used to conduct customary operations. At most Ervin used only 22.15% of Building 1. As Heartland used the same space as Ervin, the percentage of square feet in use at Building 1 remains 22.15%. Therefore, argues Grange, under no set of circumstances would the alleged theft be covered under the policy because Building 1 was vacant for more than 60 days before the theft.

Heartland filed its Motion for Summary Judgment (#23) on August 21, 2009. Heartland argues that the interpretation of the insurance policy propounded by Grange would lead to absurd results and that contracts must be interpreted in such a way as to avoid absurd results. Heartland contends that the term "vacant" has been defined in Illinois "as meaning generally empty or deprived of contents" and that "'vacant means empty of everything but air.'" Thompson v. Green Garden Mutual Ins. Co., 633 N.E.2d 1327, 1330 (Ill. App. Ct. 1994). Rather, Heartland advances a "common sense" interpretation of the subject vacancy provision, which is that when a building is

subdivided into sections which are inaccessible to each other and some sections are leased and others are not, the building will be found vacant if the leased sections comprise less than 31% of the total square footage of the building. The interior of Building 1 was not subdivided into sections which were inaccessible to each other but was instead one long very large open space. Heartland claims that, through the oral modification to the lease, Ervin was leased and had available to it 100% of the square footage of Building 1 to store equipment used in its customary operations as owner of the subject property. Heartland asks for summary judgment in its favor for $145,000, that amount representing the amount of the subject loss less the deductible under the insurance policy. Heartland also asks for summary judgment against Grange for the pre-judgment interest at the rate of 5% per annum under 815 ILCS 205/2 (West 2008). Finally, Heartland asks for attorneys fees under 215 ILCS 5/155(1) as a result of Grange's "vexatious and unreasonable delay in paying the subject claim."

Grange counters that the oral modification is not valid. Grange claims there is no evidence of the oral modification and that Heartland has not offered any formal terms for the modified lease. Nor did Heartland provide consideration for the oral modification. Without the oral modification, Ervin was just a "permissive user" of Building 1, and simply because Ervin was not a trespasser, it does not follow that Building 1 was rented or Ervin was a lessee. Therefore, since the modification is not valid, Building 1 was not rented and Ervin's use of the building has no bearing on whether it was vacant. Heartland counters that, while it is true that a contract modification must be supported by consideration to be valid, "the modification at issue was fully performed by the parties to it as of November 2007 when the last of Ervin Equipment's chattel was removed from the subject premises." For support Heartland cites to Terminal Freezers, Inc. v. Roberts Frozen Foods, Inc., 354

N.E.2d 904, 910 (Ill. App. Ct. 1976).

ANALYSIS

Under Rule 56 of the Federal Rules of Civil Procedure, a party "may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56 (a), (b). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

As a general proposition, any ambiguities in an insurance policy should be resolved against the insurance company. Myers v. Merrimack Mutual Fire Insurance Co., 788 F.2d 468, 470 (7th Cir. 1986). However, it is equally well-established that a court must not bend the language of a contract to create an ambiguity where none exists. Myers, 788 F.2d at 470-71. Insurance policies must be read as a whole and, so far as possible, give effect to every part of the policy. Myers, 788 F.2d at 471.

Even assuming Building 1 was properly leased to Ervin, the theft is not covered under the policy as the vacancy condition applies. Reading the insurance policy as a whole, the court finds the policy's definition and concept of vacancy to be clear and unambiguous. A structure will be considered vacant unless 31% of its square footage is used by the building owner or lessee to conduct its customary operations. Both parties agree that less than 31% of the square footage was in use. Therefore, under the terms of the insurance policy the vacancy condition applies and Grange is not obligated to pay for the loss suffered by Heartland due to the theft.

Heartland argues that for the court to apply the vacancy condition would lead to an "absurd

result." In support, Heartland cites to Thompson v. Green Garden Mutual Insurance Co., 633 N.E.2d 1327 (Ill. App. Ct. 1994), for the proposition that vacancy in Illinois means generally empty or deprived of contents or "empty of everything but air." Thompson, 633 N.E.2d at 1330. The Thompson case is distinguishable, however, as the only definition contained in the insurance policy for "vacant" in that case was "[a] building under construction is not considered vacant." Thompson, 633 N.E.2d at 1329. By contrast, the policy at issue in the current case lays out an explicit definition of vacancy. Heartland also cites to United Capitol Insurance Co. v. Kapiloff, 155 F.3d 488 (4th Cir. 1998), however that case is likewise inapplicable because it concerns how "vacancy" relates to a building that is sectioned off into five separate spaces. The current case involves one contiguous building that is not sectioned off into separate compartments, but rather is a large un-subdivided area. Further, it does not appear that the policy at issue in Kapiloff defined vacancy in any way.

The purpose of a vacancy provision is to exclude those structures which present a higher insurance risk than exists for occupied buildings. Kapiloff, 155 F.3d at 496. The policy at issue here sought to avoid those risks by requiring that insured structures have at least 31% of its square footage occupied by the building owner or lessee while engaging in their customary operations. That provision was clear and apparent in the insurance contract bargained for and agreed to by the parties. The vacancy condition is not so onerous or oppressive that it would lead to an absurd result so as to give this court reason to rescind or not give effect to the insurance contract. The vacancy condition applies and the theft was not covered under the policy. Grange's Motion for Summary Judgment (#20) is GRANTED in full. Heartland's Motion for Summary Judgment (#23) is DENIED.

IT IS THEREFORE ORDERED:

(1) Grange's Motion for Summary Judgment (#20) is GRANTED in full.

(2) Heartland's Motion for Summary Judgment (#23) is DENIED.

(3) This case is terminated.

ENTERED this 2nd day of February, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE